UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AARON TATONE,                                    Civ. No. 11-1862 (MJD/JSM)

　　　Plaintiff,                                  REPORT AND RECOMMENDATION

v.

SUNTRUST MORTGAGE, INC.,
NATIONSTAR MORTGAGE, LLC. et.al.


The above-entitled matter came before the undersigned on defendant Nationstar

Mortgage, LLC's Motion to Dismiss [Docket No. 2] and defendant SunTrust Mortgage,

Inc.'s Motion to Dismiss [Docket No. 4].   Kody Holker, Esq. appeared on plaintiff's

behalf.   Benjamin E. Gurstelle, Esq. and Brent R. Lindahl, Esq. appeared on behalf of

defendant SunTrust Mortgage, Inc.   David Mortensen, Esq. appeared on behalf of

defendant Nationstar Mortgage, LLC.

This matter was referred to the undersigned Magistrate Judge for a Report and

Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72.1.

## I.   BACKGROUND

### A.   Tatone's Complaint

Plaintiff Aaron Tatone sued SunTrust Mortgage, Inc. ("SunTrust"), Nationstar

Mortgage, LLC ("Nationstar") and others[1] in Minnesota State District Court.   Notice of

---

[1]   The other defendants are Assured Mortgage Group, LLC (a/k/a Anchor Home
Finance, LLC), identified in the Complaint as a mortgage broker (Complaint, ¶4), Burton
Joseph, Investment Property Advisors, Inc., Brandon Flavin, and Real Source Title,
LLC.   According to Tatone, Joseph and Flavin were convicted of racketeering in

Removal [Docket No. 1].  SunTrust Mortgage, Inc. removed the case to Federal District Court.  Id.

Tatone's Complaint alleged the following: In November, 2007 the defendants[2] "worked together" to lend Tatone funds to purchase property at 2358 Rushmore Road, Hastings, Minnesota (the "2358 Rushmore Rd. property").  Complaint, ¶10.  Using the same real estate agent, mortgage broker and title company, Tatone closed on another property the same day (2403 Rushmore Road) and another property (2377 Rushmore Road) a week later.  Id., ¶11.  Tatone did not list his pending purchases of the other properties on his loan application for the 2358 Rushmore Road property.  Id.  Tatone alleged that all three of the properties are rental properties, defendants assured him that the real estate transactions were properly structured and that the rental income from the properties would exceed the monthly payments he would have to make.  Id., ¶12.  An unnamed "broker/real estate agent" provided a check for the down payment on each property and promised Tatone that the first year of payments would be made with funds from the closing.  Id., ¶¶12, 17.  Defendant Flavin, the real estate broker who coordinated the transaction, received a commission of $43,400 or 17.5% of the purchase price.  Id.,¶19.

Tatone purchased the 2358 Rushmore Road property for $248,000 and the loan amount was $235,600 with 7.125% interest for thirty years.  Tatone was to make interest only payments for the first 120 months.  Complaint, ¶15.  Tatone alleged that

---

connection with various mortgage schemes and are currently incarcerated.  Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, p. 3 [Docket No. 19].  None of these defendants have made any appearance in this case and there is no evidence that they were ever served with the Summons and Complaint.

[2]     The Complaint generally did not distinguish between defendants.

the assessed tax value of the property between 2008 and 2010 never approached the property's purchase price.  Id., ¶16.

Tatone was timely with his mortgage payments at first, but then the "debt load sold to Tatone…was too much of a burden for [him] to bear" and the 2358 Rushmore Road property went into foreclosure.  Complaint, ¶¶13,14.  Tatone claimed that the underwriting on the mortgage was flawed because the lender failed to determine whether Tatone could repay the loan.  Id., ¶18.  Tatone's monthly income, other debts and mortgage payment on the 2358 Rushmore Road property yielded a debt to income ratio of 33.9%.  Id., ¶21.  However, the debt Tatone incurred in closing on the 2403 Rushmore Road property was not reflected on Tatone's loan application for the 2358 Rushmore Road property.  Id., ¶23.  See also Affidavit of Christina Weber ("Weber Aff."), Ex. 2 (Uniform Residential Loan Application signed by Tatone) [Docket No. 22-1].

The Complaint alleged that defendants Flavin, Joseph and Real Source failed to disclose the 2403 Rushmore Road property and corresponding debt on Tatone's loan application for the 2358 Rushmore Road property.  Complaint, ¶23.  Adding the payments owed on the two properties yielded a debt to income ratio of 83.6% to 98.6%. Id.,, ¶24.  "Although Defendant SunTrust was unaware of the mortgage from Countrywide/Bank of America, Defendants Flavin, Joseph, and Real Source were aware of the other mortgage and put Tatone in harms way with this loan."  Id.

Tatone further alleged that "troubling factors" came to light regarding the 2358 Rushmore Road property transaction, including "high debt to income ratios, lack of due diligence in underwriting, excess fees and charges, yield spread premium, high loan to value, payment shock and over leveraging."  Complaint, ¶25.  Tatone complained that

his ability to repay the loan on 2358 Rushmore Road was not considered and that defendants SunTrust and Nationstar ignored his requests for Qualified Written Requests under the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA") "and other applicable state and Federal Statutes." Id., ¶28.  Tatone claimed that defendants were creditors within the meaning of TILA, defendants were legally obligated as fiduciaries to ensure that the transaction was legal and complied with RESPA and TILA, and must comply with TILA, RESPA, the federal Unfair and Deceptive Business Practices Acts, Minnesota Uniform Deceptive Trade Practices Act; the Minnesota Consumer Fraud Act, and Code of Federal Regulations §226.23(3),[3] "among others." Id., ¶¶ 29-32.

Count One[4] of the Complaint sought a declaration that defendants had perpetuated a fraudulent loan transaction and the power of sale contained in the loan was of no force and effect because the loan violated state and federal law.  Complaint, ¶¶33-35.  Count Two sought injunctive relief to prevent the foreclosure of the property, asserting that Tatone would suffer irreparable injury if the foreclosure proceeded, because the real property "is unique," he will lose the beneficial use and enjoyment of the property and his credit score will be damaged. Id., ¶¶36-38.  Count Three alleged that defendants breached their duty of good faith and fair dealing by willfully withholding disclosures, withholding notices in regard to excessive fees and closing costs, using below standard underwriting, and by placing Tatone in a loan he could not afford to

---

[3]     12 C.R.F. §226.23(3) is Regulation Z of the TILA and provides for a consumer's right to rescind.

[4]     Counts One ("Declaratory Relief"), Two ("Injunctive Relief") and Six ("Rescission") more accurately describe relief sought rather than causes of action.

repay.  Id., ¶¶39-43.   Count Four alleged that defendants violated TILA by failing to make the requisite disclosures, and any applicable statutes of limitation were tolled as a result of defendants' failure to provide the required disclosures.  Id., ¶¶45-47.   Count Five alleged that defendants violated RESPA by charging excessive fees, including closing costs.  Id., ¶¶ 50-52.   Count Six sought rescission of the loan based on defendants' TILA and RESPA violations, fraudulent concealment, deceptive acts and practices and public policy grounds.  Id., ¶¶54-56.

Count Seven alleged fraud.   Complaint, ¶¶ 58-65.   Tatone maintained that defendants induced him to enter into the loan by withholding relevant information from him.  Id., ¶¶ 60, 61.  Tatone also alleged that the loans were fraudulent because neither "SunTrust/Nationstar" nor Assured Mortgage Group, LLC performed adequate due diligence regarding Tatone's ability to repay the loans, Tatone was provided an unrealistic repayment schedule, and the underwriting was flawed.  Id., ¶ 61.  Tatone further pled "fraud in the factum," which he asserted voided the "the instrument" (presumably the note or mortgage) because he was induced to sign without a reasonable opportunity to learn of the fraudulent character of "the instrument."  Id., ¶¶62, 63.

Count Eight alleged unfair business practices, based primarily on Tatone's assertion that defendants failed to disclose important facts about the loan to him and preyed upon his naiveté.  Complaint, ¶66.  Tatone alleged that as a result of the defendants'  "fraudulent, deceptive, unfair and other wrongful conduct…Defendants have violated State and Federal law by consummating an unlawful, unfair and fraudulent business practice… ."  Id., ¶67.

Count Nine alleged that defendants breached their fiduciary duty to Tatone by failing to make disclosures to him regarding the loan and repayment terms. Complaint, ¶¶69-73.

Count Ten alleged that defendants engaged in "predatory lending"—a claim Tatone based on "the Office of the Comptroller of the Currency['s] defin[ition] of Predatory Lending as any lien secured by real estate which share well known common characteristics that result in Unfair and Deceptive Business Practices." Complaint, ¶75. Tatone asserted that defendants' actions fell within this definition because they marketed a loan on the basis of fraud, exaggeration, misrepresentation or concealment of a material fact, the loan failed to disclose closing costs, and Tatone was not advised of the affiliations among defendants or the fees charged. Id., ¶76-78. Further, Tatone alleged that the loan was based on a loan application that "failed to report the other mortgage loan which was to close on the same day with a different lender." Id., ¶82.

Count Eleven alleged that defendants engaged in a civil conspiracy to defraud Tatone for their own economic gain. Complaint, ¶¶84-88.

Count Twelve alleged that defendants violated the Fair Credit Reporting Act ("FCRA") by "wrongfully, improperly, and illegally" reporting negative credit information about Tatone to the credit reporting agencies and that this negative information lowered his credit score. Complaint, ¶¶89, 90. The negative information provided to the agencies included the excessive debt Tatone was "tricked and deceived" into incurring. Id., ¶90. Tatone sought damages and an award of punitive damages for defendants' willful violation of the FCRA. Id., ¶¶93, 94.

As relief, Tatone sought a declaration that defendants were not entitled to foreclose on the property and that the mortgagee's power of sale was void.  Prayer for Relief, ¶¶a, b.  Tatone also sought compensatory and punitive damages, treble damages, an order enjoining defendants from foreclosing on the property, an order rescinding the loan and security agreement and ordering restitution to Tatone, and an award of his costs and fees.  Id., ¶¶c-h.

### B.    Nationstar's Motion to Dismiss

In lieu of answering, Nationstar moved to dismiss Tatone's Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment. Nationstar Mortgage's Memorandum in Support of Its Motion to Dismiss ("Nationstar Mem."), pp. 2-4 [Docket No. 11].  Nationstar submitted the affidavit of Ramie Baker, a Nationstar Vice President, and accompanying exhibits in connection with its motion, and asked the Court the convert its motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) if the Court considered the Baker affidavit and exhibits.  Id., p. 3-4.

In support of its motion, Nationstar explained that Tatone obtained the loan to purchase the 2358 Rushmore Road property from SunTrust mortgage and executed a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for SunTrust.  The mortgage was recorded by the Dakota County, Minnesota Recorder's Office on January 2, 2008.  Affidavit of Ramie Baker ("Baker Aff."), ¶3, Ex. 2 (mortgage) [Docket No. 12].  The mortgage was later assigned to Nationstar and the assignment was recorded on January 3, 2011.  Id., Ex. 3 (assignment of mortgage).  Nationstar began servicing the note and mortgage on November 8, 2010.  Id., ¶5.  Tatone

defaulted and Nationstar referred the matter to foreclosure counsel.  Id., ¶6.  The foreclosure sale occurred on June 10, 2011 and the redemption period expired on December 10, 2011.  Id., ¶¶7, 8; Ex. 4 (Sheriff's Certificate of Sale and Foreclosure Record).

Nationstar argued that Tatone's claim for rescission under TILA fails as a matter of law because his mortgage falls within the exception described by 15 U.S.C. §1635(e)(1) for residential mortgages.  Nationstar Mem., p. 5.  Further, Tatone has not alleged that he is capable of returning the money loaned, as required by 15 U.S.C. §1635(b), and this provides another basis on which the Court should dismiss his claim for rescission.  Id., pp. 5-6.

Alternatively, Nationstar submitted that any claim by Tatone under TILA or RESPA is time-barred.  TILA provides that an obligor's right of rescission expires three years after the transaction occurs, or on the sale of the property.  Nationstar Mem., p. 7.  Tatone's failure to attempt to rescind the mortgage within the time allowed dictates that he is now precluded from attempting to do so.  Id.  The civil liability provision of TILA, which provides for money damages for violations of TILA, requires that a claim be brought within one year from the alleged violation.  Therefore, Nationstar maintained that any claim by Tatone for money damages under TILA is also time-barred.  Id. (citing 15 U.S.C. §1640(e)).  Similarly, Nationstar argued that Tatone's claim under RESPA is barred because RESPA requires that a lawsuit challenging fees assessed during a mortgage transaction be brought within one year of the date of the alleged violation, and that did not happen here.  Id., p. 8 (citing 12 U.S.C. §2614).

As for Tatone's claims for breach of the implied covenant of good faith and fair dealing (Count Three), Nationstar contended that it had nothing to do with the origination of the note and mortgage, and that Tatone failed to allege any bad acts by Nationstar after the loan was originated.  Nationstar Mem. ,pp. 9-10.

Nationstar sought dismissal of Tatone's fraud claim (Count Seven) on the basis of his failure to plead fraud with the particularity required by Rule 9(b).  Nationstar Mem., pp. 10-12.  As to Counts Eight (Unfair Business Practices) and Ten (Predatory Lending), Nationstar argued that Tatone failed to identify any state or federal law that Nationstar violated.  Id. p. 12.  And to the extent Tatone was attempting to bring a common law claim for unfair business practices, no such claim exists under Minnesota law. Id., p. 12.

Nationstar denied that either it or SunTrust had a fiduciary relationship with Tatone, that as a matter of law no such relationship existed, and that certainly Nationstar, which was not a party to the original transaction, could not have been in a fiduciary relationship with Tatone.  Id., pp. 12-13.  Therefore, Tatone's claim for breach of fiduciary relationship (Count Nine) should be dismissed.

As to Count Eleven, titled Civil Conspiracy, Nationstar asserted that it was not a party to the original transaction and could not possibly have engaged in a conspiracy with the other defendants.  Nationstar Mem., pp. 14-15.  Nationstar also maintained that Tatone could not prove the existence of any wrongful acts by it or by SunTrust—a predicate for a claim of civil conspiracy—therefore, his civil conspiracy claim fails on this basis as well.  Id., p. 14.  Finally, Nationstar sought dismissal of Counts One (Declaratory Relief), Two (Injunctive Relief) and Six (Rescission) on the ground that

these causes of action depended on the other baseless causes of action that Nationstar had addressed and must be dismissed.  Id., p. 15.

### C.   SunTrust's Motion to Dismiss

In lieu of answering, SunTrust moved to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).  SunTrust Mortgage Inc.'s Memorandum in Support of Motion to Dismiss ("SunTrust Mem."), pp. 4-6, 26 [Docket No. 14].  According to SunTrust, Tatone's claims are so fatally flawed that he should not be permitted to re-plead.  Id., p. 26.  Unlike Nationstar, SunTrust relied exclusively on the Complaint to support its motion and did not seek summary judgment as an alternative to its motion to dismiss.

SunTrust objected generally to Tatone's "shot gun" approach to raising all allegations against all defendants, making it impossible to know which claims were being alleged against which defendants.  SunTrust Mem. pp. 4-5.  Specifically, SunTrust argued that Count Three (Breach of Implied Covenant of Good Faith and Fair Dealing) failed because the Complaint did not allege any bad faith conduct by SunTrust, any refusal to perform a contractual duty, or any other conduct that hindered Tatone's ability to perform his own obligations under the contract.  Id., p. 8.

Like Nationstar, SunTrust contended that Tatone's claim for damages under TILA is time-barred by the one-year statute of limitations and the three-year statute of limitations for rescission if the creditor fails to meet certain requirements under TILA.  SunTrust Mem., p. 9.  Tatone became obligated on the loan on November 21, 2007.  Consequently, even if a right to rescission existed, that right expired on November 21, 2010, some seven months before Tatone commenced this suit.  Id., pp. 9-10 (citing Complaint, ¶10).  Suntrust also maintained that Tatone's attempt to plead that the

statutes of limitation were tolled based on defendants' failure to provide the required disclosures was baseless because tolling requires evidence of fraudulent concealment, which Tatone failed to plead. Id., pp. 10-11.

SunTrust further argued that even if Tatone's claims under TILA were not time-barred, they are barred by virtue of the fact that the mortgage he execute is exempt from TILA because: (1) the extension of credit was primarily for a business purpose; (2) rescission rights do not apply to purchase-money mortgages; and (3) the property was not used as Tatone's principle dwelling. SunTrust Mem., pp. 11-12. These types of transactions are exempt from TILA. Id., p. 11 (citing 15 U.S.C. §1603(1) and 12 C.F.R. §226.3(a)(1)). In addition, the rescission rights provided by TILA do not apply to Tatone's mortgage because they apply only to refinance transactions. Id., p. 12 (citing 15 U.S.C. §§1602(w); 1602(aa); 1635(e); 12 C.F.R. §226.23(a) & (f)). Furthermore, TILA's rescission provisions do not apply to property not used as a borrower's principal dwelling and it is undisputed that Tatone did not use the 2358 Rushmore Road property as his principal dwelling; he purchased it as a rental property. Id., p. 13 (citing Complaint, ¶1: "[T]atone is, and at all material times hereto has been, a Minnesota resident, residing at 1654 86th St. West, Inver Grove Heights, Minnesota 55077").

As for Tatone's claims under RESPA, SunTrust argued that those claims had to be dismissed for three reasons. First, the claims are time-barred by RESPA's one-year and three-year statutes of limitation. Id., p. 14. Second, Tatone failed to identify the fees or closing costs that he believes were excessive. Id. Third, RESPA does not apply to extensions of credit used primarily for business or commercial purposes. Id., p. 15.

SunTrust, also like Nationstar, argued that Count Seven (Fraud) must be dismissed for Tatone's failure to plead fraud with the requisite particularity and Tatone's improper "lumping together" of all of the defendants, which also violates the Rule 9(b) pleading standard.  SunTrust Mem., pp. 15-17.  SunTrust maintained that if any fraud was committed, it was by Tatone who failed to disclose the other two pending loans to SunTrust when he applied for financing on the 2348 Rushmore Road property.  Id., p. 18.  Based on the doctrine of in par delicto, even if there was any wrongdoing on SunTrust's part, Suntrust submitted that Tatone's failure to disclose to it the other pending mortgages precluded his recovery.  Id., p. 18.  Further, SunTrust noted that Tatone never alleged that he did not qualify for and could not make the payments on the 2358 Rushmore Road property based on the financial information he provided.  Id., p. 17.  Finally, Suntrust maintained that Tatone's "fraud in the factum" claim failed because that concept is applicable only in very narrow circumstances, none of which were present here.  Id., p. 19 (citing and quoting Ohio Sav. Bank v. Progressive Cas. Ins. Co., 521 F.3d 960, 963 (8th Cir. 2008) ("[f]raud in the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly being told that it is just a letter."))

As for Count Eight (Unfair Business Practices), SunTrust argued that Tatone failed to allege any statutory or other grounds on which this count was based, failed to plead any elements of any such cause of action, and instead merely rehashed allegations from other passages in the Complaint.  SunTrust Mem., p. 20.

In response to Count Nine (Breach of Fiduciary Duty), SunTrust submitted that it is well-established under Minnesota law that a "lender-borrower relationship does not give rise to fiduciary duties absent special circumstances."  SunTrust Mem., p. 20 (citing

and quoting <u>H. Enters. Int'l  v. General Elec. Capital Corp.</u>, 833 F. Supp.1405, 1421 (D. Minn. 1993)).  Count Nine alleged that defendants "had a fiduciary duty to Tatone to not place him in the loan and in harm's way."  Complaint, ¶70.  That allegation, according to SunTrust, completely failed to allege any special circumstances that could give rise to a fiduciary relationship between SunTrust and Tatone.  <u>Id.</u>, p. 21.

SunTrust asserted that Tatone failed to state a claim on which relief can be granted as to Count Ten ("Predatory Lending") pursuant to Rule 12(b)(6), and impermissibly failed to distinguish between "the defendants" in connection with these allegations.  SunTrust Mem., p. 22.

As to Count Eleven (Civil Conspiracy), SunTrust contended that Tatone failed to meet the pleading standards under Minnesota law for civil conspiracy and, at any rate, admitted in the Complaint that SunTrust was unaware of the other loans being extended to Tatone.  SunTrust Mem.,  p. 23.

With respect to Count 12 (Violation of the FCRA), SunTrust submitted that there is no private right of action under the FCRA for a reporter's alleged reporting of inaccurate information.  SunTrust Mem., p. 24.  Further, even if such a right of action existed, a claim would have to be based on the reporting of inaccurate, not merely negative information.  <u>Id.</u>, p. 25.

Finally, SunTrust noted that Counts one ("Declaratory Relief"), two ("Injunctive Relief") and six ("Rescission") did not state claims, but rather remedies.

SunTrust sought the dismissal of the entire Complaint with prejudice because the claims failed as a matter of law.  SunTrust Mem., p. 26.

### D.    Tatone's Response and Nationstar and SunTrust's Replies

Tatone did not address Nationstar and SunTrust's arguments regarding Counts 1-6, 10 and 12 in his responsive memorandum.   Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Tatone Mem.") [Docket No. 19].   Relying on Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[5] Tatone argued that dismissal under Rule 12(b)(6) was inappropriate because: (1) he adequately pled fraud (Count Seven); (2) he adequately pled a cause of action under the Minnesota Deceptive Trade Practices Act and the Minnesota Consumer Fraud Act (Count Eight); (3) "special circumstances" were present that led to the creation of a fiduciary relationship between SunTrust and Tatone (Count Nine); and (4) he adequately pled a claim for civil conspiracy (Count Eleven). Tatone Mem., pp. 4-10.   Tatone claimed generally that if Counts Eight (Unfair Business Practices) and Eleven (Civil Conspiracy ) were light on factual support, that deficiency would be cured through discovery.   Id., p. 9.

Tatone's response stated that defendants Flavin, Joseph and John Searle (not a defendant) were SunTrust's agents in connection with the loan.   Tatone Mem., p. 3.[6] According to Tatone, Flavin was convicted and sentenced to seventy-four months in prison for racketeering for his participation in mortgage scheme "such as the one in which Plaintiff was victimized."   Id.[7]   Joseph was convicted and sentenced to eighteen

---

[5]    At oral argument on the motion, Tatone's counsel agreed that the motion should be decided under the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

[6]    This allegation is not reflected in the Complaint.

[7]    State of Minnesota v. Brandon Scott Flavin, Henn. Co. Dist. Court File No. 27-CR-10-15716.  Falvin pled guilty to racketeering and was sentenced on November 3,

months in prison "for his participation in a felonious racketeering" in a mortgage scheme similar to that in which Tatone was victimized.[8] Id.  Tatone argued that despite having the opportunity to do so in its answer,[9] SunTrust "has yet to claim that their agents, who have been criminally convicted for their actions on this loan and others did not act in a fraudulent manner." Id., p. 6.

In reply, Nationstar and SunTrust asked the Court to treat Counts One through Six, Ten and Twelve as abandoned and to dismiss those counts with prejudice. Nationstar Mortgage, LLC's Reply Memorandum ("Nationstar Reply"), pp. 1-2 [Docket No. 21]; SunTrust's Reply Brief in Support of its Motion to Dismiss ("SunTrust Reply"), p. 3.  SunTrust also objected to Tatone's effort to plead, outside of the Complaint, that any of the defendants were SunTrust's agents.  SunTrust Reply, p. 1.

III.   STANDARD OF REVIEW

A.   **Motions to Dismiss**

Nationstar and SunTrust have moved for dismissal pursuant to Rule 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6) the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). In addition, "the court must resolve any ambiguities concerning the sufficiency of the

---

2011 to serve seventy-four months at the Minnesota Correctional Facility in St. Cloud, Minnesota.  http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1613526074

[8]   State of Minnesota v. Burton Edward Joseph, Henn. Co. Dist. Court File No. 27-CR-10-15731.  Burton was convicted of racketeering following a jury trial and was sentenced to serve fourteen months at the Minnesota Correctional Facility at St. Cloud. http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1613526460.

[9]   Neither SunTrust nor Nationstar have answered the Complaint; instead both brought the instant motions to dismiss.

plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations. Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555). On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, … asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir.

2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant. See Tully v. Bank of America, N.A., CIV. NO. 10–4734 (DWF/JSM), 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) (citing Liggens v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which specific claims each Plaintiff is asserting. Thus, the Bank Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint."). See also Gurman v. Metro Hous. & Redevelopment Auth., 2011 U.S. Dist. LEXIS 69977 at *3 (June 29, 2011) (dismissing amended complaint without prejudice[10] for failing to meet Rule 8 pleading standard and noting that "the Court has repeatedly criticized the filing of

---

[10]     Judge Schiltz stayed his order of dismissal for thirty days to allow plaintiffs to file a second amended complaint that complied with the directives set forth in his order. Gurman, 2011 LEXIS 69977 at *15.  Plaintiffs then filed a Second Amended Complaint which Judge Schiltz found to be woefully deficient, because, among other reasons, plaintiffs' counsel persisted in filing 12 out of the 13 counts against all of the defendants, and most of the 13 counts were brought on behalf of each of the plaintiffs.  Gurman v. Metro. Hous. & Redevelopment Auth., Civ. No. 11-228 (PJS/JJG), Order to Show Cause, p. 7 [Docket No. 75].  In general, Judge Schiltz challenged the sufficiency of the factual allegations and legal underpinnings of the claims in the Second Amended Complaint and entered an Order to Show Cause as to why Rule 11 sanctions should not be imposed on the plaintiff's lawyers and the lawyer's firm for this pleading. Id., p. 15-16.

'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant.) (citations omitted); <u>Moua v. Jani-King of Minn.</u>, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) ("Plaintiffs' fraud claims fail to satisfy Rule 9(b) because the allegations cluster all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud scheme.").

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   <u>Iqbal</u>, 129 S. Ct. at 1949 (internal quotation marks and citations omitted).

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." <u>Michaelis v. Nebraska State Bar Ass'n</u>., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. <u>See</u> <u>McLean v. United States</u>, 566 F.3d 391, 400-401 (4th Cir. 2009) ("to the extent…that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.   Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (a <u>pro</u> <u>se</u>

18

litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

### B.  Summary Judgment

Nationstar has moved in the alternative for summary judgment pursuant to Rule 56. Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248). "[I]f the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted." DePugh, 880 F.Supp. at 656 (quoting Anderson, 477 U.S. at 248).

The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul,

<u>Dep't of Fire & Safety Servs.</u>, 224 F.3d 735, 738 (8th Cir. 2000).  If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 256; <u>Krenik v. County of LeSueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." <u>Minnesota Laborers Health & Welfare Fund v. Swenke</u>, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).

When considering a motion for summary judgment, the Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the non-moving party.  <u>Enter. Bank</u>, 92 F.3d at 747; <u>see also, e.g.,</u> <u>Graves v. Arkansas Dep't of Fin. & Admin.</u>, 229 F.3d 721, 723 (8th Cir. 2000); <u>Calvit v. Minneapolis Pub. Schs.</u>, 122 F.3d 1112, 1116 (8th Cir. 1997).

This Court has considered the Baker and Weber affidavits in connection with Nationstar's motion and will, therefore, treat its motion as a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); <u>see also</u> <u>McAuley v. Federal Ins. Co.</u>, 500 F.3d 784, 787 (8th Cir. 2007) ("We have previously held that 'Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'

With these standards of review in mind, the Court now turns to Nationstar and SunTrust's dispositive motions.

## III.    DISCUSSION

### A.    <u>Abandonment of Claims</u>

Tatone did not respond to Nationstar and SunTrust's arguments in favor of dismissal with prejudice as to Counts One (Declaratory Relief), Two (Injunctive Relief), Three (Breach of Implied Covenant of Good Faith and Fair Dealing), Four (Violation of TILA), Five (Violation of RESPA), Six (Rescission), Seven (as it relates to "Fraud in the Factum"), Ten (Predatory Lending), and Twelve (Fair Credit Reporting Act). Additionally, Tatone failed to explain how his fraud claim could survive against Nationstar.[11]   Tatone's argument in favor of his fraud claim is devoted exclusively to a discussion of the fraud allegedly committed by SunTrust's unnamed "agents."[12]   After explaining how his fraud claim against SunTrust was properly pled, Tatone stated "[a]ccordingly, Sun[t]rust's and Nationstar's argument that Plaintiff failed to state a claim on which relief can be granted is without merit.   As such, their motions should be dismissed."  <u>Id</u>., p. 7.   Merely mentioning Nationstar in the conclusion of an argument captioned "The Fraudulent Acts of Sun[t]rust's Agents Are Clearly Plead [sic] in Plaintiff's Complaint" (<u>Id</u>., p. 6) is not a response to Nationstar's argument for dismissal

---

[11]      Tatone did not allege that Nationstar made any fraudulent misrepresentation to Tatone.  <u>See</u> <u>generally</u>, Complaint.  More critically, it is undisputed that Nationstar had nothing to do with the origination of the loan and was only assigned the mortgage by SunTrust on January 3, 2011.  Baker Aff., ¶4, Ex. 3 (assignment of mortgage).

[12]      Tatone never plead in the Complaint, as he asserted in his responsive memorandum, that there was an agency relationship between any of the defendants and SunTrust, that the alleged agents were acting within the scope of their authority or, for that matter, whether SunTrust was even aware of the existence of these alleged agents.  <u>Compare</u> Complaint <u>with</u> Tatone Mem., pp. 6-7.

or summary judgment on this claim.   Similarly, Tatone did not respond at all to SunTrust's argument that "fraud in the factum" was inapplicable to his claim (SunTrust Mem., pp. 18-19).

The Court finds that Tatone abandoned Counts One through Six, Seven (as to Nationstar and as it relates to SunTrust for "Fraud in the Factum"), Ten and Twelve. Therefore, this Court recommends that those claims be dismissed with prejudice as to both Nationstar and SunTrust.  See Redding v. Capital One Bank (USA), N.A., Civ. No. 10-4386 (RHK/FLN), 2011 WL 4340855 at *2 (D. Minn. Sept. 15, 2011) (plaintiffs' Minnesota Uniform Deceptive Trade Practices Act claim deemed abandoned by their failure to respond to defendant's motion to dismiss as to that claim, and dismissing claim with prejudice) Huttner v. Aurora Loan Servs., Civ. No. 11-1048 (RHK/LIB), 2011 WL 2910390 at *1 (D. Minn. July 19, 2011) (plaintiff's failure to respond to defendant's arguments regarding two of her claims resulted in the Court deeming those claims abandoned and dismissing them with prejudice); Trnka v. Biotel, Inc., Civ. No. 07-1206 (RHK/JSM), 2008 WL 108995 at *4 (D. Minn. Jan. 9, 2008) (deeming plaintiff's retaliation claim abandoned because she failed to respond to defendant's arguments for summary judgment on that claim in her opposition brief).   See also Kamanou v. Executive Sec'y of Comm'n of the Econ. Comm., Civ. No. 10-7286, 2012 WL 162708 at *11 (S.D.N.Y. Jan. 19, 2012) ("[b]ecause [defendant] moved to dismiss all of [plaintiff's] federal and state law claims, she was obligated to present arguments as to each cause of action, regardless of any proposed amendment to the complaint.  Her failure to do so constitutes abandonment of those claims.")

The Court now turns to Nationstar and SunTrust's motions with respect to Counts 7, 8, 9, and 11.

## B.   Fraud (Count Seven) (Against SunTrust)

Rule 9(b) requires fraud claims to be pled with "particularity."   "In other words, the complaint must plead the who, what, where, when, and how" of the alleged fraud. Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009).   "This requirement is designed to enable defendants to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.   The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties.   Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."   BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citations and internal quotation marks omitted).

Tatone's opposition to dismissal of the fraud claim against SunTrust was based exclusively on his assertion in his responsive memorandum that SunTrust's agents (unnamed, but presumably Joseph and Flavin) made false representations to him regarding the value of the property, the amount of anticipated rents, "the legality of the entire undertaking," the need to disclose the other real estate purchases, the amount of the commissions and the true amount of Tatone's future monthly payments."   Tatone Mem., pp. 6-7.   Apparently forgetting that SunTrust had not answered the Complaint, Tatone argued that "at no time in their Answer or in the present Motion before the Court

has SunTrust denied that their agents made fraudulent statements to Plaintiff. SunTrust has not denied the fact that Plaintiff relied on those statements to his peril." [13] Id., p. 7

Tatone's fraud claim is exactly the sort of vague, conclusory pleading rejected by Twombly and Iqbal. Further, Tatone's failure to differentiate among the defendants is fatal to his claim. See Tully, 2011 WL 1882665 at *6; Liggens, 749 F. Supp. at 971. As a result, the Court recommends dismissal of this claim against SunTrust. The only question is whether the dismissal should be with or without prejudice.

The Court is sympathetic to SunTrust's frustration regarding Tatone's poorly pled Complaint. Nonetheless, the standard for dismissal with prejudice pursuant to Rule 12 and Rule 8 is very high. The Court must be persuaded that under no circumstances can the defects in a pleading be cured on re-pleading. See, eg., McLean, 566 F.3d at 400-401. The Court cannot say conclusively that it is inconceivable that Tatone could properly plead a fraud claim against SunTrust.[14] For that reason, the Court recommends dismissal without prejudice of the claim as to SunTrust, but with these provisos: (1) If Tatone renews his fraud claim against SunTrust, the claim must meet the Rule 9 standard of particularity. Notwithstanding his protest that the claim as pled meets this standard, it does not. It is woefully inadequate because does not plead "the who, what, where, when, and how" of the alleged fraud. (2) Tatone must direct the allegations to SunTrust and cannot renew his "shot gun" method of pleading. (3) To the extent that any re-pled fraud claim relies on a theory that Flavin, Joseph or any defendant was an

---

[13] Tatone raised the issue of agency for the first time in his brief in opposition to SunTrust's motion to dismiss, so of course SunTrust could not have anticipated a claim that was not pled in the Complaint.

[14] In reaching this conclusion this Court expresses no opinion on whether a re-pled fraud claim could survive another dispositive motion.

agent of SunTrust's, Tatone must allege facts supporting such a relationship, and must plead facts establishing that they were acting within the scope of their actual or apparent authority as SunTrust's agents when they did whatever it is that Tatone alleges was fraudulent.  Tatone may not make conclusory statements to the effect that Flavin and Joseph were SunTrust's agents.

### C.   Unfair Business Practices (Count Eight)

Nationstar and SunTrust both argued that Tatone's Complaint failed to state a claim for "unfair business practices" because he failed to allege the breach of any state or federal statutes, and there is no common-law cause of action for "unfair business practices" in Minnesota.   Nationstar Mem., p. 12; SunTrust Mem., pp. 19-20.   In response, Tatone asserted that he was bringing his claims under the Minnesota Uniform Deceptive Trade Practices Act ("DPTA") and the Minnesota Consumer Fraud Act ("CFA").  Tatone Mem., pp. 8-9.  But the Complaint only mentioned the DPTA and the CFA in a laundry list of statutes to which Tatone stated "the defendants" were subject; no claims were pled under either statute.  Complaint, ¶32.

Even if Tatone were to seek permission to amend his Complaint to assert a cause of action under the Minnesota DPTA or CFA, such a claim is futile.  For starters, neither the DPTA nor the CFA provide for a private right of action.  See Minn. Stat. §325D.45, subd. 1 (describing the remedies available for violations of the DTPA, damages not available); Minn. Stat. §325F.70, subd. 1 (stating that a civil action for an injunction under the CFA is brought by the attorney general or any county attorney). The only way for Tatone to sustain a cause of action under these statutes is through Minnesota's private attorney general statute.   See Minn. Stat. §8.31; Weller v.

Accredited Home Lenders, Inc., Civ. No. 08-2798 (JRT/SRN), 2009 WL 928522 at *3 (D. Minn. Mar. 31, 2009) (citing Collins v. Minnesota Sch. of Bus., 636 N.W.2d 816, 820 (Minn. Ct. App. 2001) (plaintiffs may bring claims under both the DTPA and the CFA pursuant to the private attorney general statute.))

However, a claim under the private attorney general statute requires a plaintiff to "demonstrate that their cause of action benefits the public." Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000); see also Davis v. U.S. Bancorp, 383 F.3d 761, 767-768 (8th Cir. 2004). The requirement to show a public benefit has been summarized as follows

> Whether a plaintiff is a proper claimant and satisfies the public benefit requirement is a threshold issue. Davis v. U.S. Bancorp, 383 F.3d 761, 767 (8th Cir.2004). The public benefit requirement is typically not met where the alleged conduct occurs in an individualized setting because successful prosecution of such conduct would not advance the state's interests. See Ly, 615 N.W.2d at 314 (where transaction was completed on "one-on-one basis" the public benefit requirement was not met); Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578 (Minn. Ct. App. 2004) (where claim relates to "single one-on-one incident" affecting only plaintiff, public benefit requirement is not met). If a plaintiff were allowed to utilize the private attorney general statute to file suit based solely upon his or her individual experience, the result would be a limitless class of potential plaintiffs. See Davis, 383 F.3d at 768. Therefore, in deciding whether a public benefit exists, the court will not assume that "one individual's negative experience with a company was necessarily duplicated for every other individual." Id. at 768. As a result, merely seeking injunctive relief has been held insufficient to constitute a public benefit. See Behrens v. United Vaccines, Inc., 228 F. Supp. 2d 965, 971 (D. Minn. 2002) (simply causing defendant to be more forthright in the future as a result of injunctive relief does not satisfy public benefit requirement).

Kivel v. Wealthspring Mortg. Co., 398 F. Supp. 2d 1049, 1056 (D. Minn. 2005).

Tatone did not plead a claim under the private attorney general statute nor can he, where he has not alleged and cannot allege any public benefit to his lawsuit.  The lawsuit, which sought to block the foreclosure of his own property, is the essence of the "single one-on-one incident" that does not convey a public benefit.  Tatone's Prayer for Relief, which sought money damages, a rescission of the loan and security agreement and an order enjoining the foreclosure of the property makes this perfectly clear.  Re-pleading will not cure this issue.  This is particularly true as to Nationstar, which had nothing to do with the origination of the loan.   Therefore, this Court recommends dismissal with prejudice of Count 8 as to SunTrust and summary judgment in Nationstar's favor on this claim.

### D.      Breach of Fiduciary Duty (Count Nine)

SunTrust and Nationstar both argued that there was no fiduciary relationship between them and Tatone, and therefore his claim for breach of fiduciary duty fails. Nationstar Mem., pp. 12-13; SunTrust Mem., pp. 20-21.   Tatone's argument that a fiduciary relationship exists depends completely on his un-pled allegation that SunTrust's agents made misleading statements to him.   Tatone Mem., p. 8.   The Complaint states that the "lender has a fiduciary duty to the borrower to perform due diligence before extending credit" and that defendants had a fiduciary duty to Tatone not to place him in harm's way.  Complaint, ¶¶69-71.

The federal court looks to state law to determine the existence of a fiduciary relationship.  Davis v. Merrill Lynch, Pierce, Fenner & Smith, 906 F.2d 1206, 1215 (8th Cir. 1990).   Under Minnesota law, a fiduciary relationship exists when "'confidence is reposed on one side and there is resulting superiority and influence on the other; and

the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.'" Toombs v. Daniels, 361 N.W. 2d 801, 809 (Minn. 1985) (quoting Stark v. Equitable Life Assurance Soc'y, 285 N.W. 466, 470 (Minn. 1939)). The existence of a fiduciary relationship is generally a question of fact, but the Court is not precluded from resolving the issue as a matter of law if the undisputed facts show that no fiduciary relationship existed.  Minnesota Timber Producers v. American Mut. Ins., 766 F.2d 1261, 1267 (8th Cir. 1986), cert. denied 474 U.S. 1059 (1986).

It is well-established that a lender-borrower relationship does not give rise to fiduciary obligations, absent special circumstances.  Denny Hecker's Cadillac-Pontiac-GMC, Inc. v. GMAC, Inc., Civ. No. 10-0068 (JRT/RLE), 2010 WL 3399163 at *6 (D. Minn. Aug. 26, 2010) (citing Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 623 (1973)); Impulse Trading, Inc. v. Norwest Bank Minn, NA., 870 F. Supp. 954, 961 (D. Minn. 1994) ("the relationship between a bank and its customer is one of debtor and creditor…this relationship is not one of agent and principal and therefore does not give rise to a fiduciary relationship."); Hurley v. TCF Banking & Sav., F.A., 414 N.W.2d 584, 587 (Minn. Ct. App. 1987) ("a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor.")

In Klein, the Supreme Court held that a bank

> has no special duty to counsel the customer and inform him of every material fact relating to the transaction…unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.

196 N.W.2d at 623.  See also H Enter. Intern. v. General Elec. Capital Group, 833 F. Supp. 1405, 1421-1422, n. 5 (D. Minn. 1993) ( a fiduciary relationship between a lender

and borrower must arise out of a special circumstance).   Minnesota has recognized special circumstances when: (1) confidence is placed in the lender which results in superiority and influence over the other party, <u>Midland Nat'l Bank v. Perranoski</u>, 299 N.W.2d 404, 413 (Minn. 1980); (2) combined with a confidential relationship, the lender has greater access to facts and legal resources, <u>May v. First Nat'l Bank of Grand Forks</u>, 427 N.W.2d 285, 289 (Minn. Ct. App.1988); and (3) a disparity of business experience is combined with invited confidence, <u>Murphy v. Country House, Inc.</u>, 240 N.W.2d 507, 512 (1976).

Notwithstanding Tatone's conclusory and unsupported statement that a fiduciary relationship existed between Nationstar, SunTrust and Tatone, this Court has no difficulty concluding that no such relationship existed as a matter of law.   Tatone has completely failed to allege any facts that would support the creation of "special circumstances" that would give rise to a fiduciary relationship actionable under the law. To the contrary, Tatone's  Uniform Residential Loan Application and the allegations in the Complaint show that as to SunTrust, this was an ordinary real estate transaction. Similarly, there are no allegations in the Complaint that relate at all to Nationstar, the assignee of the mortgage.   This Court can conceive of no circumstances under which a fiduciary relationship could have been created between Tatone, Nationstar or SunTrust. Ironically, it was Tatone who had material information regarding his qualifications for the mortgage that he failed to disclose to SunTrust (<u>i.e.</u> Tatone knew that SunTrust was unaware that he was obligating himself on the mortgage for 2403 Rushmore Road the same day).   In terms of greater access to facts, it was Tatone and not SunTrust who had that access.

Under these circumstances, this Court recommends that Tatone's claim for breach of fiduciary duty (Count Nine) be dismissed with prejudice as to SunTrust and that Nationstar be granted summary judgment in its favor on this claim.

###    E.    Civil Conspiracy (Count Eleven)

To properly plead civil conspiracy, Tatone must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose. Damon v. Groteboer, Civ. No. 10-92 (JRT/FLN), 2011 WL 886132 at *4 (D. Minn. Mar. 14, 2011) (citing Marty H. Segelbaum, Inc. v. MW Capital, LLC, 673 F. Supp. 2d 875, 880-81 (D. Minn. 2009)); see also Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950)("[a] conspiracy is a combination of persons to accomplish an unlawful purpose by unlawful means.")  In addition, "defendants' actions must be based on an underlying intentional tort." Segelbaum 673 F. Supp. 2d at 880.  "[S]ince in so-called civil conspiracy cases liability is predicated upon the tort committed by the conspirators and not upon the conspiracy, allegations of conspiracy do not change the nature of the cause of action. * * * Accurately speaking, there is no such thing as a civil action for conspiracy." Harding, 41 N.W.2d at 825 (internal quotation omitted).  Furthermore, "a plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together" to injure the plaintiff. Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (internal citation and quotation omitted).

The Complaint alleges, with no factual support, that "Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish an illegal act by unlawful means, and to

commit one or more overt acts in furtherance in the conspiracy to defraud Tatone." Complaint, ¶84.   Further, "defendants agreed among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment of Tatone."   Id., ¶85.   Tatone's only response to Nationstar's and SunTrust's motions to dismiss this Count was to complain that without discovery, "Plaintiff is understandably without sufficient information to detail every aspect of the relationship between Suntrust and their [sic] agents."   Tatone Mem., p. 9.[15]

It is not sufficient for a plaintiff to cut and paste the elements of a cause of action into a complaint and then expect the claim to survive a motion to dismiss.  See Segelbaum 673 F. Supp. 2d at 880 ("A plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy.") (citing Twombly, 550 U.S. at 555).   Tatone's claim of civil conspiracy against Nationstar, in particular, borders on the frivolous.   There is no allegation that Nationstar or any of its personnel knew Tatone, knew anyone at SunTrust, or knew anything about the origination of the mortgage.   Similarly, there are no allegations that SunTrust agreed with anyone to do anything in connection with Tatone or his mortgage.   In light of the ninety-four paragraphs of the Complaint, encompassing twelve counts (nine of which Tatone abandoned without protest), this Court suspects that this count was, like those Tatone abandoned, simply thrown up against the wall to see if it would stick.   In light of the legal

---

[15]     This response begs the question of Tatone's counsel's obligation to undertake adequate pre-filing investigation to ensure that the allegations in the complaint have evidentiary support, or "if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."   Minn. R. Civ. P. 11.02 (emphasis added).   The Court quotes the Minnesota Rule, as this Complaint originated in state district court.   Federal R. Civ. P. 11 is substantially the same.

standards governing a properly pled complaint for conspiracy, the standards of Iqbal and Twombly, and this Court's conviction that the defects in Tatone's pleading cannot be cured on re-pleading, the Court to recommends dismissal with prejudice of this Count as to SunTrust.  Tatone's failure to raise any genuine issues of material fact as to Nationstar's role in any alleged conspiracy also makes summary judgment in Nationstar's favor appropriate.

In summary, Tatone brought a bare bones, kitchen sink complaint that did not distinguish between the defendants and which describes legally and factually unsupported (and unsupportable) claims.  While Tatone aspires to find support for the allegations at some point down the road, Iqbal and Twombly clearly contemplate a standard of pleading higher than that reflected in Tatone's Complaint.  This Court does not believe that the defects in Tatone's pleading can be cured on re-pleading because his claims uniformly fail as a matter of law.  The only claim that should be dismissed without prejudice is Tatone's common law fraud claim against SunTrust.

## IV.  DISMISSAL OF THE COMPLAINT AGAINST ASSURED MORTGAGE GROUP LLC (A/K/A ANCHOR HOME FINANCE, LLC), BURTON JOSEPH; INVESTMENT PROPERTY ADVISORS, INC., BRANDON FLAVIN AND REAL SOURCE TITLE, LLC.

SunTrust removed this lawsuit from state district court to federal court on the basis of federal question jurisdiction based on Tatone's allegations regarding TILA, RESPA, FCRA and supplemental jurisdiction over the state-law claims.  Notice of Removal, ¶¶3-4 [Docket No. 1].  When the case was removed defendants Assured Mortgage Group LLC (a/k/a Anchor Home Finance, LLC), Burton Joseph; Investment Property Advisors, Inc., Brandon Flavin and Real Source Title, LLC had not been served with the Summons and Complaint.  Id., ¶8.  There is no evidence that these

defendants have ever been served.  As a result, the Court lacks personal jurisdiction over these defendants and the Complaint against them should be dismissed without prejudice.  <u>Smith v. Ghana Commercial Bank, Ltd.</u>, 379 Fed. Appx. 542, 543 (8th Cir. 2010) (court lacks personal jurisdiction over defendants not properly served); <u>Ahmed v. United States</u>, 147 F.3d 791, 797 (8th Cir. 1998) (dismissal for lack of jurisdiction on account of improper service is not an adjudication on the merits and therefore should be without prejudice).

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendant Nationstar Mortgage, LLC's Motion to Dismiss with Prejudice or in the Alternative for Summary Judgment [Docket No. 2] be GRANTED and all claims against Nationstar be dismissed with prejudice.

2.     Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss with Prejudice [Docket No. 4] be GRANTED in part and denied in part as follows:

a.     Counts One through Six and Eight through Twelve be dismissed with prejudice;

b.     Count Seven (fraud) be dismissed with prejudice to the extent the plaintiff has pled "fraud in the factum;"

c.     Count Seven (common law fraud) be dismissed without prejudice.

3.     All claims against Assured Mortgage Group LLC (a/k/a Anchor Home Finance, LLC), Burton Joseph, Investment Property Advisors, Inc., Brandon Flavin and Real Source Title, LLC be dismissed without prejudice.

Dated: February 13, 2012                          *Janie S. Mayeron*
                                                  JANIE S. MAYERON
                                                  United States Magistrate Judge


## **NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 27, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.